UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>EVAN MARTINEZ-DIAZ,<br>TIMOTHY PEOPLES, and<br>LUIS TORRES-GARCIA<br><br>    Defendants. | Case No. 19-cr-00226-RS-1<br><br>**ORDER ON MOTIONS IN LIMINE** |

The government and defendants Timothy Peoples and Luis Torres-Garcia have collectively filed 18 motions *in limine*. The below summarizes the rulings on the parties' motions, which may be revised at trial. *See City of Pomona v. SQM North America Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

### I. THE GOVERNMENT'S MOTIONS *IN LIMINE*

**A. Motion No. 1: Wiretap Calls and Texts with Co-Conspirator Statements**

The government seeks to introduce alleged co-conspirator statements from wiretap calls and texts from its First Amended Notice of Co-Conspirator Statements (Exhibit A) under Rule 801(d)(2)(E) as to Torres-Garcia and Evan Martinez-Diaz. The government also seeks to proffer various calls or texts between Peoples and defendant Lorenzo Lee, arguing that Peoples' statements are admissible as non-hearsay admissions of a party-opponent pursuant to 801(d)(2)(A), and Lee's statements are admissible as co-conspirator statements pursuant to 801(d)(2)(E). Peoples' second motion *in limine* mirrors the government's motion.

A statement by a co-conspirator is admissible if the government establishes by a preponderance of the evidence that 1) a conspiracy existed at the time the statement was made; 2) the defendant had knowledge of and participated in the conspiracy; and 3) the statement was made in furtherance of the conspiracy. *United States v. Larson*, 460 F.3d 1200, 1211 (9th Cir. 2006). "Once the conspiracy has been proven under these standards, only 'slight evidence' is necessary to connect a coconspirator to the conspiracy." *See United States v. Perez*, 658 F.2d 654, 658 (9th Cir. 1981). Although insufficient on their own, the "district court may consider the coconspirator's statements themselves in determining whether the preliminary fact of a conspiracy has been proven by a preponderance of the evidence." *United States v. Knigge*, 832 F.2d 1100, 1103 (9th Cir. 1987), *amended by* 846 F.2d 591 (9th Cir. 1988) (citing *Bourjaily v. United States*, 483 U.S. 171 (1987)). The government has provided sufficient foundational evidence to demonstrate that Torres-Garcia and Martinez-Diaz's statements were made in furtherance of a drug conspiracy, and are therefore admissible.

Further, the government has sufficiently established that the conversations between Peoples and Lee are admissible. Peoples' statements are admissible under 801(d)(2)(A) as party-opponent statements, while Lee's statements are additionally admissible as coconspirator statements under 801(d)(2)(E). Peoples and the government agree that Peoples' own statements are admissible under 801(d)(2)(A) but disagree whether Lee's statements in the proffered conversations with Peoples are admissible under 801(d)(2)(E). Peoples argues that any wiretap calls or texts between the two must be excluded on the grounds that the proffered statements do not qualify as coconspirator statements because Peoples engaged in nothing more than a buyer-seller relationship with his codefendants, as opposed to a coconspirator. Therefore, according to Peoples, the government has not met its burden to show by a preponderance of evidence that Peoples was engaged in a conspiracy, making the statements inadmissible pursuant to Rule 801(d)(2)(E). He also insists that the probative value of the calls is outweighed by their prejudicial effect, or, alternatively, the calls are irrelevant. Fed. R. Evid. 403; 401. The government opposes this motion, arguing that Peoples and Lee were, in fact, engaged in a "long-term, ongoing

agreement" for Lee to supply Peoples with cocaine for further dissemination, and, in any case, Lee's statements are admissible as necessary context for Peoples' statements on these calls.

The statements between Peoples and Lee suggest that they were engaged in a conspiracy. Out of court statements implicating a defendant in a conspiracy alone are insufficient to establish a defendant had "knowledge of and participated in the conspiracy;" corroborating evidence is needed to implicate the defendant in the alleged conspiracy. *See United States v. Silverman*, 861 F.2d 571, 578-79 (9th Cir. 1988). To meet their burden to show the existence of a conspiracy between Peoples and Lee, the government proffers not only evidence of the calls and texts between them, but the physical surveillance of the two, as well as of Anthony Brown, Lee's deliveryman. One example proffered by the government includes Brown, who visited Peoples' home after a call between Peoples and Lee in which the former ordered four ounces of cocaine from the latter. That Peoples is not charged with a conspiracy is distinct from the question of admissibility of Lee's statements, such that the absence of a conspiracy count is not determinative. Moreover, the statements are not unduly prejudicial to Peoples simply because the contraband was not contemporaneously seized to the surveilled calls. The contraband was seized from Peoples during a raid conducted on April 30, 2019, and the last time Lee or someone working for Lee met with Peoples was on February 16, 2019. Peoples argues that this gap in time supports the notion that these calls would be unduly prejudicial to Peoples as they will "only create speculation" as to Peoples' possession of the drugs. However, the evidence of the numerous calls, coupled with the government's proffer of the multiple encounters between Peoples and Lee (or his associates) supports a contrary inference. Accordingly, this motion is granted, and Peoples' second motion *in limine* is denied.

**B.  Motion No. 2: Recalling Special Agents Shaw and Christofferson to the Witness Stand**

The government next seeks permission to recall Drug Enforcement Agency ("DEA") Special Agents Shaw and Christofferson under Federal Rule of Evidence 611(a) as witnesses as opposed to one time, arguing they are central to the wiretap investigation across all defendants and

seriatim testimony will be easier to follow. The government suggests that this method will allow the agents to testify clearly in connection with the various defendants and for several purposes related to their investigation. Cross-examination will be limited to the matters the agent testified to during the relevant appearance on the witness stand. Defendants do not object, and because this mode of evidence presentation will facilitate comprehension for the jury, this motion is granted.

### C. Motion No. 3: Authentication of Wiretap Recordings by Agent Shaw

The government seeks to present testimony from Agent Shaw, who authored the wiretap affidavits and co-supervised the wiretap project, to authenticate the wiretap calls. It suggests Agent Shaw will authenticate the recordings in his testimony by identifying the voices on the call to corroborate the defendants' actions with their conversations. The authentication of the wiretap recording is relevant to their admissibility and such testimony would not result in a prejudicial effect on any defendant. Defendants do not object and the motion is granted.

### D. Motion No. 4: Summary Table to Prove Content of Voluminous Wiretap Recordings (Peoples only)

Moving under Federal Rule of Evidence 1006, which permits the use of a "summary" or "chart" as substantive evidence to present voluminous records if the underlying records are admissible, the government seeks to introduce a summary table of recordings of calls between Lee and Peoples. *See United States v. Fernandez*, 980 F.2d 739 (9th Cir. 1992). The government argues that the summary table is necessary because "it would be tedious and unnecessary to play each (very similar) call for the jury" where Peoples is ordering cocaine or cocaine base from Lee. Peoples contends that this evidence is impermissibly cumulative under Rule 403, so should be excluded. Alternatively, he suggests that 64 of the calls presented in the summary table were noticed belatedly, and exclusion is an appropriate sanction for the government's error. Rule 403 bars cumulative evidence that "has little incremental value." *United States v. Miguel*, 87 Fed. App'x 67, 68-69 (9th Cir. 2004). The table the government seeks to admit summarizes communications between Lee and Peoples and reflects the frequency of their communications; they do not, as Peoples insists "amount to…post-deadline prejudicial piling on." Finally, Peoples'

statements are admissible under 801(d)(2)(A) as party-opponent statements and Lee's statements are admissible under 801(d)(2)(E) as co-conspirator statements. Accordingly, this motion is granted.

### E. Motion No. 5: Lay Opinion Testimony from Agents Shaw and Christofferson

Invoking Federal Rule of Evidence 701, the government argues that Agents Shaw and Christofferson should be permitted to offer lay opinions about the meaning of ambiguous, distinctive, or coded terms Defendants use in the intercepted calls and text messages based on the agents' extensive investigation of the Defendants' conduct. Specifically, the government argues that Agents Shaw and Christofferson listened to hundreds of hours of wiretapped calls and investigated the Defendants' purported unlawful conduct related to drug trafficking, which provided the agents with extensive personal knowledge about the terminology used by the Defendants in furtherance of their illicit activities.

Peoples opposes this motion, arguing that the government wrongfully seeks to proffer expert testimony as lay testimony. Fed. R. of Evid. 702. Depending on the circumstances, law enforcement testimony may be both expert and lay testimony. *United States v. Reed*, 575 F.3d 900, 922 (9th Cir. 2009). "While witnesses who testify as an expert may receive unmerited credibility for their lay testimony, because expert testimony is likely to carry special weight with the jury…the converse is not true: a lay witness's testimony carries no special weight, even if at points the lay witness has recourse to relevant background and training." *United States v. Gadson*, 763 F.3d 1189, 1212 (9th Cir. 2014) (internal quotations omitted). Here, Officers Shaw and Christofferson have firsthand knowledge of this case, as both were heavily involved in the investigation and listened to intercepted calls and texts comprising communications between the defendants and their associates. The government will be expected to establish an adequate foundation for the basis of officers' opinions when this testimony is elicited, and must be tethered to this specific case. This motion is granted.

### F. Motion No. 6: Sequestration of Agents Shaw and Christofferson

The government next relies on Federal Rule of Evidence 615 to argue that agent-witnesses

Shaw and Christofferson should be exempt for sequestration, Agent Shaw because he is designated the government's party representative under 615(a)(2), and Agent Christofferson because his "presence" is "essential" to this case under 615(a)(3). Generally, Rule 615 requires the exclusion of witnesses from the courtroom during trial proceedings so that they may not hear other witnesses' testimony, with some exceptions. 615(a)(2) permits the party's attorney to designate one representative to remain in the courtroom, and 615(a)(3) permits the inclusion of any person who is essential to a party's claim or defense. "The purpose of this rule is to prevent witnesses from 'tailoring' their testimony to that of earlier witnesses." *United States v. Ell*, 718 F.2d 291, 293 (9th Cir. 1983).

The government insists that because this case consists of a complex "multi-defendant, multi-year" wiretap investigation and both agents spent two years investigating the wiretap, each of them have knowledge that is "irreplaceable" and "non-overlapping," making Agent Christofferson's presence "essential" to the trial. The government also suggests that Agent Christofferson should be exempted from sequestration as the defense table consists of "four percipient parties," so the government should have more than one knowledgeable witness for the sake of "parity." The government has sufficiently shown that both agents are collectively essential to the presentation of its case, so this motion is granted with two caveats: first, when one agent is testifying, the other must be excluded from the courtroom; and second, both agents are prohibited from discussing the trial proceedings and testimony with any witness who has yet to testify at trial.

### G.  Motion No. 7: Sequestration of Defense Witnesses

The government seeks to exclude defense witnesses from the courtroom under Rule 615(a). This motion is unopposed and granted.

### H.  Motion No. 8: Good-faith Basis for *Henthorn* Inquiry

The government seeks a ruling that the defense be required to offer proof of or relevance of any inquiries about alleged officer misconduct outside the presence of the jury *before* making such inquiries in the jury's presence. Peoples insists that government witnesses should not get "special treatment" and their credibility should be open to attack, consistent with other witnesses. Since

*Henthorn* inquiries can be highly prejudicial, this motion is granted. The defense must proffer any evidence intended to be used of alleged officer misconduct to the court before inquiry before the jury.

### I. Motion No. 9: Impeachment Material Regarding One Agent (Peoples only)

The government next moves to exclude *Henthorn* material it shared with Defendant Peoples from use at trial, unless Defendant Peoples makes a good-faith proffer, under seal, as to how the materials would constitute impeachment material. In response, Peoples submitted various records pertaining to Agent Job, who was present at the April 30, 2019 raid of Peoples' residence, that it seeks to use to challenge the agent's credibility. These records were reviewed *in camera*. The proffered records are not suitable impeachment material as they are not probative of the agent's credibility. Accordingly, this motion is denied.

### J. Motion No. 10: References to General DEA policies (Peoples only)

Peoples has sought via subpoena all Drug Enforcement Agency ("DEA") and Department of Justice ("DOJ") training and field manuals and directives dealing with collection and documentation of evidence during searches, chain of custody. The DEA opposes this request, claiming that these policies reflect internal procedures and do not impact Peoples' legal or constitutional rights. The government seeks to exclude any references to general policies by Peoples, arguing that Peoples should be required to proffer the materiality of these policies at trial. In particular, the government argues that the materials should be barred under Rule 403 because of their potential to confuse and mislead the jury by suggesting that the searches, seizures, or interviews with Peoples were conducted in a manner counter to department policies, which may inadvertently impact Peoples rights. However, any violation of these policies has no bearing on Peoples legal or constitutional rights, and this motion is granted.

### K. Motion No. 11: Peoples' Prior Arrests

The government argues that Peoples' arrests from 2009 should be admissible for non-propensity purposes if Peoples makes the argument at trial that the drugs or drug-related evidence from the search of his residence was planted or staged by the government. The government

1  identifies two prior arrests or convictions for possession or purchase of cocaine or manufacture of
2  controlled substances that it aims to proffer for the purposes of showing motive, intent,
3  preparation, plan, and knowledge. Fed. R. Evid. 404(b)(2). Evidence of "other acts" is admissible
4  if the government can show that the evidence "(1) tends to prove a material point in issue; (2) is
5  not too remote in time; (3) is proven with evidence sufficient to show that the act was committed;
6  and (4) if admitted to prove intent, is similar to the offense charged." *United States v. Beckman*,
7  298 F.3d 788, 794 (9th Cir. 2002). If it meets these conditions, the evidence may be barred only if
8  its probative value is outweighed by prejudice to the defendant. Fed. R. Evid. 403.

9  Alternatively, the government moves to admit prior convictions under Rule 609(a)(1) for
10 impeachment purposes should Peoples elect to testify. Rule 609(a) permits the admissibility of
11 prior convictions to attack a defendant-witness's credibility, subject to Rule 403 balancing. The
12 Ninth Circuit has identified five factors to determine whether the probative value of a prior
13 conviction outweighs its prejudicial effect on the defendant: "(1) the impeachment value of the
14 prior crime; (2) the point in time of conviction and the defendant's subsequent history; (3) the
15 similarity between the past crime and the charged crime; (4) the importance of the defendant's
16 testimony; and (5) the centrality of the defendant's credibility." *United States v. Alexander*, 48
17 F.3d 1477, 1488 (9th Cir. 1995).

18 Judgment on this motion is deferred. Whether the probative value of Peoples' prior arrests
19 outweigh their prejudicial effect will be evaluated when and if this inquiry becomes relevant and
20 in light of the record developed at that point.

21 **L.  Motion No. 12: Antioch Police**

22 This issue turns on the question of whether or not Antioch Police Officer Amiri was
23 present at the search of Peoples' residence on April 30, 2019, and if he was alone at the outset.
24 The present record, evidenced by the CAD reports, indicate he was not, but this showing is not
25 definitive. Agent Job simply muddies the waters by declaring that his initial report noting Amiri's
26 presence was hearsay from some other officer. If Amiri was not there, to allow his racist slurs and
27 criminal charges to be introduced would be a misleading sideshow. If he was present and alone for

1  an initial period, his history becomes relevant and admissible. Accordingly, an evidentiary hearing
2  on this issue is warranted. The hearing is set for Tuesday at 2:30pm following trial proceedings,
3  which may include testimony from the officers listed on the CAD reports and others present at the
4  scene of the search during the relevant time period.

## II.   PEOPLES' MOTIONS *IN LIMINE*

### A. Motion No. 1: Peoples' Prior Arrests and Convictions

Discussed *supra* Section I.K.

### B. Motion No. 2: Wiretap Calls and Texts

Discussed *supra* Section I.A.

### C. Motion No. 3: Cell Phone Data

Peoples moves to exclude data from his cell phone, which was seized during the April 30, 2019 raid. The government is now attempting to discover the passcode pursuant to a search warrant executed in November 2023. The government states that should any relevant evidence on his cell phone be discovered, it will immediately be disclosed to Peoples. However, Peoples correctly points out that it would be "patently unfair" to introduce new evidence from his seized cell phone so close to trial. Since no relevant evidence has been disclosed from Peoples' cell phone as of yet, this motion is granted.

### D. Motion No. 4: Pills

Peoples next seeks to exclude all evidence of the methamphetamine or MDMA pills from trial for being unduly prejudicial. Fed. R. Evid. 403. He contends that the indictment does not reference pills, nor is he being charged with any counts related to possession of methamphetamine or MDMA. The government does not object this motion and it is granted.

### E. Motion No. 5: Special Agent Mateer's Expert Testimony

Federal Rule of Evidence 702 permits reliable expert testimony to aid the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588-89 (1993). Peoples argues that Agent Mateer's testimony lacks a reliable basis because the government has failed to specify investigations, statistical studies, or

cases on which Agent Mateer bases his opinions. Peoples further insists that Agent Mateer's testimony violates his Sixth Amendment right to confrontation, contending that because the agent bases his opinions on "interviews, arrests, and investigations" with "cooperating sources and individuals involved in illegal drug trafficking," he is "used as little more than a conduit or transmitter for testimonial hearsay." *United States v. Vera*, 770 F.3d 1232, 1237 (9th Cir. 2014). Finally, Peoples argues that Agent Mateer's testimony is unduly prejudicial because it is used to establish that Peoples is a "typical" cocaine trafficker and the jury is likely to overvalue his testimony, given that he is a law enforcement officer. This motion is denied. Agent Mateer's proffered testimony is not unduly prejudicial, and he has relevant and sufficient knowledge, training, and expertise. Further, this testimony would not violate Peoples' right to confrontation because Agent Mateer's applies his training and sources to reach an "independent judgment." *Id.* (internal citation omitted).

### III.     TORRES-GARCIA'S MOTION *IN LIMINE*

Defendant Torres-Garcia has filed one motion *in limine*, seeking to prohibit the government from introducing any evidence of his whereabouts on February 7, 2019. On the day in question, a Sonoma County Sherriff's Deputy conducted a traffic stop of Torres-Garcia based on the DEA's request following their extensive surveillance of him. The Sonoma County Sherriff's Deputy who conducted that stop purportedly observed Torres-Garcia acting in conformity with plans made during recorded calls and identified Torres-Garcia for the purposes of the DEA investigation. The government timely provided a federal investigative report authored by a DEA agent that reference that stop, which includes a summary of the observations of the Sonoma County Sherriff's Deputy involved in the traffic stop. Torres-Garcia, on the eve of trial, requested the Sonoma County Sherriff's report but has since learned that no such state police report about the stop exists, and the body-worn camera footage is no longer available.

Torres-Garcia initially argued that the government has failed to meet its obligations under *Giglio* and *Brady*, so "all evidence of Mr. Torres-Garcia's activities on February 7, 2019" should be excluded. However, he has since learned that the government did not receive this evidence,

because it never existed. Now, Torres-Garcia moves to sever and for a continuance to explore why this evidence does not exist, citing concerns that the evidence may have been destroyed in bad faith. The government provided Torres-Garcia with all the evidence it had in its possession when it received it and was not obliged to investigate further the Sonoma County Sherriff's Department records. Torres-Garcia has not shown that the Sonoma County Sherriff's Department has failed to preserve this evidence in bad faith. *See Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). Torres-Garcia may question any witnesses about the whereabouts of the state report (if one ever existed) or the body-worn camera footage, but exclusion of all the events from February 7, 2019 is unwarranted. Accordingly, this motion is denied.

**IT IS SO ORDERED**.

Dated: February 1, 2024

_____
RICHARD SEEBORG
Chief United States District Judge