UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY PEOPLES;<br>EVAN MARTINEZ-DIAZ;<br>LUIS TORRES GARCIA.<br><br>Defendants. | Case No. 19-cr-00226-RS-1<br><br>**FURTHER ORDER ON GOVERNMENT'S MOTION IN LIMINE NO. 12** |

## I. INTRODUCTION

In the course of the federal law enforcement investigation in this case, the Drug Enforcement Agency ("DEA") and Bureau of Alcohol, Tobacco, and Firearms ("ATF") were assisted by officers from the Antioch Police Department in executing search warrants and evidence collection, the bulk of which occurred in 2018 and 2019. Since then, several Antioch police officers have been accused of, and indicted for various crimes, including civil rights violations and wire fraud. In preparation for trial, the government submitted numerous motions *in limine*, including one to prohibit the defendants from referencing any federal indictments or charges brought against Antioch officers unless they first establish their relevance to this case outside the presence of the jury ("MIL No. 12"). Defendant Timothy Peoples insisted that the federal case against the Antioch officers was relevant because two members of the Antioch Police Department accused of misconduct were present at the search of Peoples' home on April 30, 2019. An evidentiary hearing was set to determine threshold matters in relation to the motion. Having

considered the parties' briefs, witness testimony, and admitted exhibits from the hearing, the government's motion is granted, and the defendants are prohibited from referencing the federal investigation of any Antioch police officers.

## II. BACKGROUND

The defendants previously filed a discovery motion to compel production of impeachment material related to Antioch police officers who assisted with the DEA and ATF investigation of the defendants in the instant case. That motion was denied. Anticipating the issue would reappear at trial, the government filed MIL No. 12 to prevent the defendants from referencing Antioch police misconduct in the presence of the jury without first establishing relevance for fear that this would result in undue prejudice to the government. Dkt. 489. In response, Peoples suggested that witnesses and the DEA-6 report regarding the search of Peoples' home, authored by DEA Agent Mikhail Job, identified Antioch officers accused of misconduct as having participated in the April 30, 2019 search of Peoples' residence.

Shortly before the pretrial conference, Peoples submitted a supplemental opposition to MIL No. 12 with information he and the government had just learned. Dkt. 521. In that supplemental opposition, Peoples contended that Agent Job had identified Antioch Officer Morteza Amiri, who has since been indicted on wire fraud charges and civil rights violations, as having entered Peoples' residence alone for five to ten minutes along with his police dog after the occupants had been cleared out and before the official search began. Peoples also suggested that Antioch Officer Kyle Smith, who allegedly exchanged racist texts with other Antioch officers, joined the search of Peoples' home. The government filed a supplemental response contending that Agent Job received erroneous information from the DEA case agents and had mistakenly named the wrong Antioch officers on his DEA-6 report. Dkt. 528. According to the government, Officers Amiri and Smith were not present at the search of Peoples' home but were participating in the contemporaneous search of Defendant Lorenzo Lee's residence. At the pretrial conference, the threshold question of whether Amiri was present at the search of Peoples' home remained unresolved. The only potential relevance of the Antioch officers' misconduct turned on whether

Amiri and/or Smith were present at Peoples' residence such that Peoples could infer the police planted evidence. *See* Fed. R. Evid. 104. Accordingly, an evidentiary hearing was set to ascertain this preliminary fact.

### III. LEGAL STANDARD

Evidence is relevant if it tends to "make a fact more or less probable" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. However, "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b). "In determining whether the [proponent] has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the [proponent] has proved the conditional fact by a preponderance of the evidence." *Huddleston v. United States*, 485 U.S. 681, 690 (1988). Rather, "[a] court determines whether such proof is 'sufficient' by 'examin[ing] all the evidence in the case and decid[ing] whether the jury could reasonably find the conditional fact…by a preponderance of the evidence.'" *United States v. Plascensia-Orozco*, 852 F.3d 910, 924 (9th Cir. 2017) (quoting *Huddleston*, 485 U.S. 690).

### IV. DISCUSSION

Peoples failed to establish that a jury could reasonably find that Amiri was present at Peoples residence on April 30, 2019 by a preponderance of evidence. At the evidentiary hearing, both sides admitted several witnesses and exhibits, and the government's evidence was considerably more persuasive. The government's witnesses included several law enforcement agents who corroborated their version of the events on the day in question. The testimony of two Antioch officers, Kevin Tjahjadi and Brayton Milner, who participated in the search of Peoples' residence, was particularly persuasive. Both stated unequivocally that neither Amiri nor Smith joined in that search. The Antioch Police Department CAD reports regarding the search of Peoples' residence further supported this version of events, identifying only Tjahjadi and Milner as the participating officers. Exhs. A; E. DEA Agent Justin Zapanta, who led the search of Lee's residence, also testified that he had asked all officers present to identify themselves for his notes in

preparation of the DEA-6 report about the search of Lee's residence. Exh. K. By contrast, Agent Job, the lead DEA agent for the search of Peoples' residence did not note the names of the Antioch officers present at Peoples' residence. Instead, he called the DEA lead case agents following the search to identify the names of the assisting Antioch officers for the DEA-6 report about Peoples' residence. This method was certainly less reliable than Zapanta's since the searches of Lee and Peoples' residences occurred contemporaneously and neither of the DEA lead case agents were present at either. It is likely that Agent Job recorded Amiri and Smith as the assisting officers for the search of People's residence based on erroneous information from the DEA case agents and relied on this mistake in the years following in making further representations. Moreover, Peoples' witnesses and version of events were unsupported by credible testimony or exhibits. He argues that Lee and Peoples' residences were less than five minutes apart and it is possible that, following the raid of Lee's home, Amiri drove to Peoples' residence to participate in that search. He provides no evidence to support this argument other than conjecture. The witness called by Peoples, Cresensia Allen, who resided at the searched residence and with whom he shares a daughter, demonstrated strong bias in favor of Peoples and against the government. Her identification of Amiri as having been at the scene of the search was shaky at best and subject to impeachment.

## V. CONCLUSION

For the foregoing reasons, the government's MIL No. 12 is granted. The defendants are prohibited from referencing any federal indictments or prosecutions of Antioch police officers.

**IT IS SO ORDERED**.

Dated: February 8, 2024

RICHARD SEEBORG
Chief United States District Judge